UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALLEN BERMAN et al.,

                              Plaintiffs,

                                                    **DECISION AND ORDER**
            v.                                        10-CV-1044A

JAMES ROTTERMAN et al.,

                              Defendants.

## I.     INTRODUCTION

On December 23, 2010, plaintiffs Allen Berman, Gloria Berman

(individually and as executrix of the estate of Murray Berman), M&G Berman,

Inc., and Cut Your Credit Card Rates, LLC filed a complaint against defendants

James and Diana Rotterman, Strategic Credit, LLC, JRCG Holdings, LLC, and

Warlord Media, LLC.  Plaintiffs alleged six counts against defendants related to

fraudulent sales of credit card payment processing businesses.  On February 1,

2011, defendants filed a motion to dismiss part of the first and second and all of

the fourth, fifth, and six counts of the complaint under Rules 9(b)(6) and 12(b)(6)

of the Federal Rules of Civil Procedure ("FRCP").  On February 22, 2011,

plaintiffs invoked their right under FRCP 15(a)(1)(B) to amend their complaint

once as a matter of course, to address some of the points that defendants

raised in their motion.  The Court permitted defendants to update their motion

papers as they saw fit in response to the amended complaint.  During the filing

of updated motion papers, plaintiffs conceded that Gloria Berman, in her

individual capacity, should be dismissed from Count I.  On March 22, 2011, the

parties agreed to dismiss Diana Rotterman from the case.

The parties now have completed filing updated papers concerning

defendants' pending motion.  The Court has deemed the motion submitted on

papers pursuant to FRCP 78(b).  For the reasons below, the Court grants the

part of the motion that plaintiffs have conceded but otherwise denies the motion.

## II.    BACKGROUND

This case concerns allegations that James Rotterman ("Rotterman")

fabricated tax returns, client lists, online auctions, and other documents to trick

plaintiffs into giving him nearly $2 million to buy businesses that never existed.

According to the amended complaint, Rotterman and the corporate defendants,

all owned by Rotterman, advertised through the World Wide Web in March 2008

that he was selling businesses that provided services for credit card payment

processing.  That month, plaintiff Allen Berman ("Allen"), a Connecticut resident

who is affiliated with Connecticut-based Cut Your Credit Card Rates, LLC, saw

the advertisement and contacted Rotterman.  Allen disclosed to Rotterman, who

resides in Orchard Park, New York, that he knew nothing about credit card

processing but that he was interested in entering the industry.  Rotterman

proceeded to tell Allen about his credit card processing businesses, including a representation that Rotterman had numerous banks and financial institutions as clients and that his businesses earned over $900,000 per year as income. Rotterman offered to sell Alan 68% of his businesses.  Notably, Rotterman allegedly told Allen that if he "decided to become involved in the credit card processing business [then] Rotterman could and would train and instruct [him] to become knowledgeable and proficient in the business, and in doing so advised plaintiff that [Rotterman] would act as their agent."  (Dkt. No. 18 ¶ 33.)

In the spring of 2008, Allen met with Rotterman to pursue further his interest in buying Rotterman's businesses.  Allen met Rotterman at Rotterman's corporate offices in Williamsville, New York.  The meeting lasted three hours. During the meeting, Rotterman gave Allen more details about his credit card processing businesses and showed him what appeared to be proprietary software that helped process credit card transactions.  Allen asked Rotterman for documentation of his businesses.  Rotterman declined to provide a customer list but provided what appeared to be corporate tax returns demonstrating the revenue streams that he had described to Allen.  The meeting ended with Allen telling Rotterman that he would tell his father Murray Berman ("Murray") about the possible purchase, including all the information about the businesses that Rotterman gave Allen.

Rotterman spent the next two years giving Allen more information about his credit card processing businesses while Allen persuaded his family to help fund the purchase.  Allen discussed the possible purchase with Murray, who in turn relayed all of Rotterman's information to his wife Gloria Berman ("Gloria"). Rotterman also sent Murray e-mail messages directly that contained the same information that he had discussed with Allen.  Meanwhile, Rotterman gave Allen and his parents numerous documents between March 2008 and July 2010 that looked like a client list and details of relationships that Rotterman had with various financial institutions.  During this time, Rotterman also told Allen and his parents about an online auction that they should enter to buy an additional credit card processing business that would guarantee them a steady stream of revenue from HSBC Bank.  Based on Rotterman's advice and the agency/fiduciary relationship that they developed with him, Allen and his family ultimately decided to submit a winning bid for the online auction and to buy the 68% stake in Rotterman's businesses.  As part of these purchases, Allen gave Rotterman a total of $823,919.88.  Murray and Gloria gave Rotterman a total of $1,017,640.  After paying Rotterman, Allen and his family expected to receive a formal transfer of ownership in the newly acquired businesses.  Allen and his family also expected to be able to visit a certain website that Rotterman said would give them details about the online auction that they supposedly won. Instead, Allen and his family never received anything from Rotterman and

4

discovered that the credit card processing businesses that they supposedly purchased never existed.  Additionally, the website that supposedly would display the results of the online auction was a fabrication that Rotterman himself created.

Plaintiffs commenced this action once they realized that they never would receive anything in exchange for the money that they gave Rotterman.  The amended complaint contains six counts.  Count I is a claim for rescission of all contractual agreements that plaintiffs entered with defendants.  Plaintiffs claim that they never would have entered any agreements with defendants had they known the truth about Rotterman's alleged scam.  Count II is a claim for fraud based on defendants' allegedly intentional misrepresentations about non-existent credit card processing businesses.  Count III is a claim of unjust enrichment based on plaintiffs' transfer of almost $2 million to defendants without receiving anything in return.  Count IV is a claim of conversion of the money that plaintiffs gave defendants, money that plaintiffs possessed and otherwise would continue to possess.  Count V seeks the imposition of a constructive trust against defendants to prohibit them from transferring plaintiffs' money to others.  Count VI seeks an accounting of all of the money that plaintiffs gave defendants as part of the allegedly fraudulent transactions that Rotterman proposed.

Defendants do not challenge plaintiffs' claim for unjust enrichment (Count III) at this time through their motion, and also do not challenge Counts I or II to the extent that any plaintiff other than Gloria—in her individual capacity—is advancing them.  Defendants do, however, seek dismissal of the rest of the amended complaint.  Specifically, defendants seek to dismiss Counts I and II as against Gloria individually because Gloria never had a contractual relationship with them, and because plaintiffs do not allege any misrepresentations made specifically to Gloria.  Defendants seek to dismiss Count IV because a conversion claim concerning money requires that the money be specifically identified and segregated its own account, with an obligation to return the money or to treat it in a particular manner.  Defendants seek to dismiss Counts V and VI because no fiduciary relationship existed between plaintiffs and defendants that would form the basis for the imposition of a constructive trust and of an accounting.  Plaintiffs have conceded that Gloria had no contractual relationship with defendants and have withdrawn her in her individual capacity from Count I. Plaintiffs generally oppose defendants' other arguments by noting specific bank accounts into which they disbursed funds and by noting that their trust in Rotterman led them to offer consideration for credit card processing businesses that never existed.

III.   **DISCUSSION**

A.   *FRCP 12(b)(6) and 9(b)(6) Generally*

In general, defendants challenge the legal sufficiency of Counts I and II as to Gloria individually, and Counts IV through VI in their entirety.  "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  FRCP 8(a)(2).  FRCP 8(a)(2) requires a plaintiff to state, in concise but plausible fashion, what he currently thinks a defendant actually did to him, subject to revision during later discovery.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).  Courts assess the legal sufficiency of a claim while "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted).

The legal sufficiency of a fraud claim requires additional specificity.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." FRCP 9(b). "A complaint of fraud satisfies Rule 9(b) if it sets forth who made the fraudulent statements, the dates and places at which the alleged fraudulent statements were made, the manner in which the statements were false and upon which statements plaintiffs relied. Plaintiffs need not, at this stage, plead scienter with great specificity, and conclusory allegations of scienter are adequate where a complaint provides a minimal factual basis that gives rise to a strong inference of fraudulent intent. This 'strong inference' may be demonstrated by showing that defendants had a motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior. When assessing the specificity of a fraud complaint, the reviewing court should read the complaint liberally, drawing all inferences in favor of the non-moving party." *M & T Mortg. Corp. v. Miller*, 323 F. Supp. 2d 405, 412 (E.D.N.Y. 2004) (citations omitted).

### B.   *Count I: Gloria's Individual Claim for Rescission*

Whether Gloria as an individual should remain in Count I does not require much discussion because plaintiffs agree with defendants on this point. "Defendants contend that Gloria Berman is not a party to any contract, and, on that basis, cannot state a claim for rescission. Based upon that contention, plaintiffs discontinue Gloria Berman's cause of action against defendants for rescission." (Dkt. No. 23 at 8.) Accordingly, the Court grants defendants' motion as to Gloria individually and Count I.

8

### C.    *Count II: Gloria's Individual Claim for Fraud*

Defendants seek to dismiss Gloria individually from Count II on the grounds that plaintiffs have not pled any fraudulent misrepresentations made directly to her.  "Under New York law, a plaintiff may state a claim for fraudulent misrepresentation made to a third party if he alleges that he relied to his detriment on the defendant's misrepresentation and that the defendant intended the misrepresentation to be conveyed to him."  *Secs. Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71 (2d Cir. 2000) (citations omitted).  Here, plaintiffs have pled that Rotterman made fraudulent misrepresentations to Allen and Murray; that Murray, in turn, passed the misrepresentations to Gloria; that Gloria relied on the misrepresentations; and that Rotterman knew of Gloria's reliance.  In fact, Murray and Gloria together gave Rotterman money from their joint bank accounts, including a $39,000 payment that Gloria made to Rotterman "at her husband's direction."  (Dkt. No. 18 ¶ 98.)  This early in the case, the Court will make a reasonable inference that Rotterman must have been aware that his allegedly fraudulent misrepresentations were having an effect on Gloria, since he was receiving money from a woman whom he never met.  *Cf., e.g., Carofino v. Forester*, 450 F. Supp. 2d 257, 269 (S.D.N.Y. 2006) (holding that a third party allegedly defrauded by a defendant's misrepresentations "is not foreclosed from bringing this claim if he can establish that he personally relied upon the misrepresentations, and that defendant intended his

9

misrepresentations to be conveyed to [the third party]"); *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*, No. 03 Civ.10027, 2004 WL 1110423, at *9 (S.D.N.Y. May 19, 2004) ("The fact that the representation was not made directly to Waturu Iwata is not fatal to the claim because he has alleged 'that he relied upon it to his detriment, and that the defendant[ ] intended the misrepresentation to be conveyed to him.'") (alteration in the original) (citations omitted). Defendants will have an opportunity to revisit their argument at the close of discovery if proof does not emerge confirming Gloria's reliance and Rotterman's intent with respect to her.  The Court thus denies defendants' motion as to Gloria individually and Count II.

### D.   *Count IV: Conversion*

Defendants seek dismissal of plaintiffs' conversion claim because plaintiffs have failed to identify a specific account in which they hold a possessory interest that has been frustrated.  "Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession.  [I]t is well-settled that an action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question. The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another."  *LoPresti v. Terwilliger*, 126 F.3d

34, 41–42 (2d Cir. 1997) (alteration in the original) (citations omitted); *see also*

*Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)

("Two key elements of conversion are (1) plaintiff's possessory right or interest in

the property and (2) defendant's dominion over the property or interference with

it, in derogation of plaintiff's rights.") (citations omitted).  Here, plaintiffs have

alleged that they sent defendants specific amounts of money totaling nearly $2

million for the sole purpose of buying credit card processing businesses from

defendants and through an online auction.  *Cf. ADP Investor Commc'n Servs.,*

*Inc. v. In House Atty. Servs., Inc.*, 390 F. Supp. 2d 212, 225 (E.D.N.Y. 2005)

(denying an motion to dismiss a conversion claim where the plaintiff sought an

exact amount of money that it sent to the defendant by wire transfer to an

identifiable bank account).  Plaintiffs have not stated that they gave defendants

this money for any other purpose, and defendants have not suggested

otherwise.  If plaintiffs can prove during discovery or at trial that the businesses

that they sought to purchase never existed then their loss of that money, or any

use of that money by defendants for any other purpose, would establish their

conversion claim.  Plaintiffs should have an opportunity to conduct discovery

accordingly.  The Court thus denies defendants' motion as to Count IV.

### E.   *Count V: Constructive Trust*

Defendants seek dismissal of plaintiffs' claim[1] for a constructive trust because plaintiffs have not alleged any confidential or fiduciary relationship between the parties.  "A constructive trust is an equitable remedy, necessarily flexible to accomplish its purpose.  Its purpose is to prevent unjust enrichment, although unjust enrichment does not necessarily implicate the performance of a wrongful act.  What is necessary is that the court identify a party who is holding property under such circumstances that in equity and good conscience he ought not to retain it."  *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) (internal quotation marks and citations omitted).  "Generally, New York law requires that a person establish four elements before a court will impose a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment.  Although these elements are meant to

---

[1] Technically, Count V is not a "claim" in the sense of an independent theory of liability, but rather a request for a particular equitable remedy.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419 (S.D.N.Y. 2010) ("A constructive trust is a remedy, not a cause of action, and is to be imposed only in the absence of an adequate remedy at law.") (internal quotation marks and citations omitted); *A. Brod, Inc. v. SK & I Co., L.L.C.*, 998 F. Supp. 314, 326 (S.D.N.Y. 1998) ("A constructive trust is an equitable remedy, not a legal relationship.") (citations omitted).

provide important guideposts, the constructive trust doctrine is equitable in nature and should not be rigidly limited." *U.S. v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995) (internal quotation marks and citations omitted).

For purposes of the pending motion, defendants are not challenging the last three elements required for a constructive trust, choosing to focus on what they believe is the absence of the first element. "A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir. 1991) (alteration in the original) (internal quotation marks and citations omitted). Federal courts interpreting New York law frequently have cited the following explanation of a fiduciary relationship from New York's State Supreme Court, Appellate Division:

> Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another. Such a relationship might be found to exist, in appropriate circumstances, between close friends or even where confidence is based upon prior business dealings.

*Penato v. George*, 383 N.Y.S.2d 900, 904–05 (N.Y. App. Div. 1976) (citations omitted). Here, plaintiffs have pled that Rotterman made numerous

representations to them about non-existent businesses "[w]ith full knowledge
that Allen Berman had no experience, background in or knowledge about credit
card payment processing."  (Dkt. No. 18 ¶ 23.)  Plaintiffs have pled further that
Rotterman offered to act as plaintiffs' agents in the credit card processing
industry until they received enough training to become knowledgeable and
proficient themselves.  The training presumably would have come from
Rotterman.  These allegations, on their face, set forth that plaintiffs confided in
defendants and trusted defendants' advice about how to enter the credit card
processing industry.  If proven, these allegations also would explain why
plaintiffs felt comfortable giving nearly $2 million to someone whom they did not
know before meeting him in response to an Internet advertisement.  Under these
circumstances, and because the determination of a fiduciary relationship is fact-
sensitive, plaintiffs should have an opportunity to use discovery to elaborate on
the details of their relationship with defendants.  The Court thus denies
defendants' motion as to Count V.

### F.   *Count VI: Accounting*

The above analysis of defendants' argument to dismiss Count V shortens
the analysis needed for the same argument that they make against Count VI.
As with Count V, defendants want Count VI dismissed because no confidential
or fiduciary relationship exists between the parties that would justify the request
for an accounting.  "The right to an accounting is premised upon the existence of

14

a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Newman v. Herbst*, No. 09-cv-4313, 2011 WL 684165, at *7 (E.D.N.Y. Feb. 15, 2011) (citation omitted); *see also Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 233 (S.D.N.Y. 2010) ("Accounting under New York law is an equitable remedy that requires the existence of a fiduciary relationship between [the plaintiff] and the defendant, or the existence of a joint venture or other special circumstances warranting equitable relief.") (alteration in the original) (citation omitted).  As the Court explained with respect to Count V, plaintiffs have pled that a fiduciary relationship arose between them and defendants because they confided in defendants about their ignorance of the credit card processing industry and trusted defendants to guide them through the purchases of credit card processing businesses.  Whether plaintiffs can prove the factual basis for a fiduciary relationship at trial is another matter, but their initial pleading suffices to give them a chance to prove that factual basis during discovery.  Accordingly, the Court denies defendants' motion as to Count VI.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court grants defendants' motion (Dkt. No. 9) in part to dismiss plaintiff Gloria Berman, in her individual capacity, from Count I of the amended complaint.  The Court otherwise denies the motion.

15

As a housekeeping matter, the Court also directs the Clerk fo the Court to terminate former defendant Diana Rotterman's motion to dismiss (Dkt. No. 21) as moot in light of the stipulation (Dkt. Nos. 25, 26) to release her from this case.

Defendants shall answer the amended complaint within 20 days of entry of this Decision and Order.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: June 1, 2011

16